**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| GEORGE TEHAN, individually and on behalf of | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:26-cv-02254-AHA |
| v. | ) | Judge Amir H. Ali |
| | ) | |
| VANGUARD PARKING SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT VANGUARD PARKING SOLUTIONS, INC.'S
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS[1]**

Defendant Vanguard Parking Solutions, Inc. ("Vanguard") moves under Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4, to compel Plaintiff George Tehan to arbitrate his claims against Vanguard on an individual basis and to stay this action pending arbitration. In support, Vanguard states as follows.

---

[1] This motion is filed in order to preserve judicial resources, and honor the parties agreement to arbitrate. In the event this Court denies the motion, Vanguard preserves its right to file a motion to dismiss, in compliance with the procedure established in the Minute Order, issued on June 29, 2026. Out of an abundance of caution, and to the extent necessary, Vanguard respectfully asks this Court to extend any deadlines to respond until the full disposition of this motion.

PPAB 13988160v2

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 3

FACTUAL BACKGROUND ................................................................................................... 4

    A.   The Complaint admits the parking transaction and Tehan's ownership interest. ............... 4

    B.   The posted Parking Contract states the method of acceptance, arbitration obligation, and class waiver. ............................................................................................................................ 5

    C.   Tehan's own dispute and portal records confirm ownership, use, notice, and assent. ....... 6

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT ............................................................................................................................ 7

    I.   The posted Parking Contract formed an enforceable agreement to arbitrate..................... 7

        A.   The contract invited acceptance by conduct, and the driver accepted by parking and remaining. ............................................................................................................................ 7

        B.   Decisions involving comparable parking signs confirm that parking manifests assent to arbitration. ............................................................................................................................ 8

        C.   Tehan is bound because his co-owner accepted an ordinary parking contract incident to use of the vehicle. .................................................................................................................. 9

        D.   Equitable estoppel independently forecloses Tehan from relying on the parking contract while rejecting its arbitration clause. .................................................................... 10

    II.   The arbitration clause covers Tehan's CPPA claim. ........................................................ 11

    III.   Tehan's portal dispute independently require arbitration. ............................................ 11

    IV.   The class-action waiver requires individual arbitration.............................................. 12

    V.   Section 3 requires a stay. ................................................................................................. 13

    VI.   Alternatively, any genuine dispute about driving or authorization must be resolved in a prompt, limited Section 4 trial. .......................................................................................... 13

CONCLUSION...................................................................................................................... 14

PPAB 13988160v2

**INTRODUCTION**

The Complaint pleads the facts that formed the parking contract. Plaintiff George Tehan ("Tehan") and his spouse co-own the vehicle. His spouse drove it into Vanguard's private parking facility and parked there. The facility displayed a written Parking Contract stating that parking constitutes acceptance, directing any nonconsenting driver to exit within fifteen minutes, and requiring individual arbitration of disputes arising from the parking. Those facts establish the facility agreement. Tehan's own pre-suit communications then remove any serious doubt about ownership, authorized use, or notice. He wrote that "my vehicle" was parked at the facility while shopping; later declared, "I am the owner of the vehicle"; and stated that he would "proceed to formal arbitration" if the notice was not resolved. Goldman Decl. ¶¶ 25-26, Ex. H.

The agreement binds Tehan even though the Complaint identifies his spouse as the driver. Under District of Columbia law, a principal may be bound by an arbitration agreement accepted by an agent acting with actual or apparent authority. *Oehme, van Sweden & Assocs., Inc. v. Pinchuk*, 902 F. Supp. 2d 87, 97-99 (D.D.C. 2012). Authorization to use and park a jointly owned vehicle carries the implied authority to enter the ordinary parking arrangement necessary to do so. The Complaint alleges ordinary use by Tehan's co-owner spouse and does not allege theft, conversion, or any other unauthorized possession. And Tehan cannot invoke the parking transaction and contract as the source of his injury while repudiating the arbitration term in the same transaction.

Courts confronting materially similar parking signs have enforced the agreements formed by parking. *Brant v. Parking Revenue Recovery Services, Inc.* held that conspicuously posted signs created a binding arbitration agreement even without a gate, stop sign, or click-through. No. 1:25-cv-01771-GPG-NRN, ECF No. 36, at 17-20 (D. Colo. Apr. 14, 2026). *Tobey v. Ace Parking*

*Management, Inc.* and *Crostarosa v. LAZ Parking Ltd*. reached the same conclusion on comparable posted terms. 2025 WL 1919887, at *3-6 (N.D. Tex. July 11, 2025); 2026 WL 183469, at *4-10 (D. Colo. Jan. 23, 2026). A Florida court also directed the vehicle owner to arbitration under this same Vanguard contract after the owner denied being the driver. *Barbieri v. Vanguard Parking Solutions Inc.,* No. CONO-25-051879 (Broward Cnty. Ct. Sept. 15, 2025) (order attached as Exhibit 1).

The online record independently compels the same result. Vanguard's customer-activity records reflect that Tehan also submitted his formal dispute through the assent-controlled portal workflow. Before submitting the online dispute, Tehan clicked a checkbox, acknowledging that he read and agreed to the portal's Terms. The Terms of the portal contain an individual-arbitration clause and class waiver. Goldman Decl. ¶¶ 18-29, Exs. F-I.

The Court should compel individual arbitration under the posted Parking Contract. Tehan's portal usage assent to its terms provide an independent basis for the same result. A bare denial of driving or authorization would not defeat Vanguard's evidentiary showing. Tehan must produce competent evidence creating a genuine dispute over formation. If he does, FAA Section 4 requires a prompt, limited trial on that issue—not denial of the motion and not merits or class discovery.

## FACTUAL BACKGROUND

### A. The Complaint admits the parking transaction and Tehan's ownership interest.

Tehan alleges that he and his spouse are co-owners of a 2008 Kia Sedona. Compl. ¶ 6. He further alleges that his spouse parked the vehicle at the underground garage at 1515 New York Avenue NE, Washington, D.C., on January 29, 2026. *Id.* ¶ 8. He does not allege that the vehicle was stolen, used without permission, or otherwise outside his spouse's authorized possession.

4

The Complaint also admits that the facility displayed the governing parking terms. It reproduces a photograph of the four signs posted together near the route from the garage to the retail store. Id. ¶¶ 11-12. One is headed "PARKING CONTRACT - PRIVATE PROPERTY" and states in prominent text: "IF YOU DO NOT CONSENT TO THIS CONTRACT, EXIT NOW." Id. ¶ 12; Goldman Decl. ¶¶ 6-11, Exs. A-B.

The challenged notice arose from that parking session. Compl. ¶¶ 19-26. Tehan claims personal injury because the charge attached to his co-owned vehicle, and he alleges that he took the primary role in contesting it. *Id.* ¶¶ 27-28. His own communications are more direct. On February 14, 2026, he wrote from gtehan@hotmail.com that "my vehicle (license# 68835ce) was parked at this location while shopping." On March 22, 2026, he submitted a formal dispute of Notice A9FC4, stated "I am the owner of the vehicle," and threatened to "proceed to formal arbitration to contest the entire charge." Goldman Decl. ¶¶ 25-26, Ex. H.

### B. The posted Parking Contract states the method of acceptance, arbitration obligation, and class waiver.

The Parking Contract tells drivers exactly how the contract is accepted and rejected:

> "By parking in this Facility, you agree—on behalf of yourself and, if you are not the owner of the vehicle you are parking, on behalf of that owner—to the terms and conditions of this Parking Contract. . . . If you do not want to be bound by this Contract, you must exit this Facility within 15 minutes of entering."

Goldman Decl. ¶ 8, Ex. B. The face of the sign separately states: "ARBITRATION: Unresolved disputes shall be resolved through binding arbitration." It also discloses the jury-trial and class-action waivers. *Id.* ¶ 9. The full arbitration provision provides:

> "EXCEPT AS OTHERWISE REQUIRED BY APPLICABLE STATE LAW, ANY AND ALL DISPUTES, CLAIMS OR CONTROVERSIES BETWEEN YOU AND VANGUARD ARISING FROM YOUR PARKING AT THE FACILITY OR UNDER THIS CONTRACT, WHICH ARE NOT AMICABLY RESOLVED, SHALL BE SETTLED THROUGH BINDING ARBITRATION

5

ADMINISTERED BY THE AAA UNDER ITS CONSUMER ARBITRATION RULES."

The clause specifies that the FAA and federal arbitration law apply, waives jury and class proceedings, requires claims to be brought in an individual capacity, and authorizes the arbitrator to award the same individual relief available in court, including statutory, declaratory, and injunctive relief. Goldman Decl. ¶ 10, Ex. B.

### C. Tehan's own dispute and portal records confirm ownership, use, notice, and assent.

Vanguard's ordinary-course records identify Maryland plate 68835CE, the January 29, 2026 parking session from 10:29 a.m. to 1:53 p.m., the resulting Notice A9FC4, and the owner information associated with the vehicle. Goldman Decl. ¶¶ 11-17, Exs. C-E. The internal notice record matches the vehicle photographs, records the 3-hour, 23-minute stay, and identifies the notice as arising from the facility at 1515 New York Avenue NE.

Tehan personally adopted the dispute and assented to arbitration. His February 14 correspondence identified the vehicle as his, acknowledged that it had been parked at the facility while shopping, and stated that he had read terms warning that payment would forfeit a trial. His March 22 formal dispute—submitted through Vanguard's portal dispute workflow—again identified him as the owner, challenged the Parking Contract, offered $25 to resolve Notice A9FC4, and expressly invoked "formal arbitration" as the next step. Goldman Decl. ¶¶ 25-26, Ex. H.

The portal required the user to click a checkbox and agree to Vanguard's linked Privacy Policy and Terms of Service before the system would permit the dispute action. Id. ¶¶ 19-24, Exs. F-G. The Terms presented throughout this period required individual AAA arbitration of disputes concerning the Terms or Vanguard's services and contained jury-trial and class-action waivers. Id. ¶¶ 27-29, Ex. I.

6

PPAB 13988160v2

**LEGAL STANDARD**

The FAA makes a written arbitration agreement "valid, irrevocable, and enforceable" on the same grounds as any other contract. 9 U.S.C. § 2. Section 4 directs the Court to compel arbitration when satisfied that an agreement was made and has not been honored. *Id.* § 4. State contract law governs formation, while federal law governs the FAA's enforcement command. *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021).

A motion to compel arbitration is evaluated as a request for summary disposition on formation. The movant first must submit evidence sufficient to establish an enforceable agreement. The burden then shifts to the opponent to produce evidence comparable to Rule 56 evidence showing a genuine dispute. *Hilbert v. Uber Technologies, Inc.*, No. 24-584, 2025 WL 42725, at *2-3 (D.D.C. Jan. 7, 2025) (citing *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 9 (D.D.C. 2021)). If no genuine dispute exists, the Court compels arbitration. If a genuine dispute exists, Section 4 requires the Court to "proceed summarily to trial solely on the issue of arbitrability." *Jin v. Parsons Corp.*, 966 F.3d 821, 827 (D.C. Cir. 2020).

**ARGUMENT**

I.    **The posted Parking Contract formed an enforceable agreement to arbitrate.**

    **A. The contract invited acceptance by conduct, and the driver accepted by parking and remaining.**

D.C. law judges assent objectively from the parties' words and conduct, not from an unexpressed state of mind. *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995). A party who has a reasonable opportunity to review contractual terms cannot escape them by saying she did not read them. *Forrest v. Verizon Communications, Inc.*, 805 A.2d 1007, 1010-11 (D.C. 2002).

The offer here was direct. The sign identified itself as a "PARKING CONTRACT," stated that parking constituted agreement, warned nonconsenting drivers to exit, and gave them fifteen

7

minutes to do so. The driver accepted the offered license to park by leaving the vehicle at the facility rather than exiting. That conduct supplied both assent and consideration: The facility permitted temporary use of private property, and the driver accepted the posted conditions governing that use.

The Complaint's location allegations do not negate formation. Tehan admits that the contract and parking instructions were posted together on the patron's route from the garage to the store. Compl. ¶¶ 11-12. The contract expressly gave a patron who encountered the signs fifteen minutes to reject the terms and remove the vehicle. Whether the individual driver stopped to read every line is not the test. The question is whether the terms and the specified method of rejection were reasonably communicated.

### B. Decisions involving comparable parking signs confirm that parking manifests assent to arbitration.

In *Brant*, multiple plaintiffs argued that posted parking terms were unread, poorly located, or ineffective without a gate, speed bump, or click-through. The court rejected those objections, held that "[c]learly posting signs is enough," and compelled arbitration because each plaintiff accepted the contract by parking. No. 1:25-cv-01771-GPG-NRN, ECF No. 36, at 17-20.

*Tobey* likewise enforced an arbitration clause displayed on red parking signs and a payment-kiosk sticker. The court held that the parker had reasonable notice, received the ability to park, and was bound to arbitrate the dispute arising from enforcement of the parking rules. 2025 WL 1919887, at *3-6.

*Crostarosa* involved a DPPA claim arising from automated parking enforcement. The court found that conspicuous signs formed a contract, that the plaintiff manifested assent to the arbitration agreement by parking, and that his failure to see the signs was legally immaterial. 2026 WL 183469, at *4-10.

*Franklin* similarly recognized that parking in a lot open on stated terms is a consensual consumer transaction giving rise to contractual parking charges and penalties. *Franklin v. Parking Revenue Recovery Services, Inc.*, 832 F.3d 741, 744-45 (7th Cir. 2016).

The Vanguard-specific result is the same. In *Barbieri*, the vehicle owner denied driving and opposed arbitration on that basis under the same Parking Contract. The Broward County Court dismissed without prejudice and directed the parties "to go to arbitration." No. CONO-25-051879 (Broward Cnty. Ct. Sept. 15, 2025), Ex. 1. The order  enforced this precise clause in the same owner-versus-driver posture.[2]

### C.  Tehan is bound because his co-owner accepted an ordinary parking contract incident to use of the vehicle.

The Complaint alleges that Tehan and his spouse co-own the vehicle and that she used it to park at the facility. Compl. ¶¶ 6, 8. It does not allege unauthorized use. Those pleaded facts establish lawful possession by a co-owner and, absent competent contrary evidence, support the reasonable inference that the use was known and permitted. At minimum, they establish Vanguard's prima facie showing; any sworn denial of permission presents a discrete Section 4 formation issue.

Under D.C. law, a principal may be bound by an arbitration agreement accepted by an agent acting with actual or apparent authority. *Oehme*, 902 F. Supp. 2d at 97-99. Actual authority is inferred from the principal's manifestations to the agent and includes authority reasonably incidental to accomplishing the authorized objective. *Makins v. District of Columbia*, 861 A.2d

---

[2] This case is distinguishable from *Hunsinger v. Parking Revenue Recovery Services, Inc.* where arbitration was denied because the plaintiff produced a title transfer and DMV notification showing that he had sold the vehicle months before the parking event. No. 3:25-cv-02227-N-BW, 2025 WL 3960913, at *4-5 (N.D. Tex. Dec. 4, 2025), *report and recommendation adopted*, 2026 WL 78028 (N.D. Tex. Jan. 9, 2026).

590, 593 (D.C. 2004). Apparent authority exists when the principal places the agent in a position that reasonably communicates authority to the third party. *Sigal Construction Corp. v. Stanbury*, 586 A.2d 1204, 1218-19 (D.C. 1991).

Authorizing another person to possess, drive, and park a vehicle necessarily authorizes the routine transactions incident to that use: entering a private garage, accepting the facility's posted terms, paying or registering when required, and agreeing to the ordinary mechanism for resolving disputes arising from that parking. The driver could not carry out the authorized objective without accepting or rejecting the terms on which the property owner offered access. The contract itself reinforces that ordinary understanding by stating that a nonowner driver accepts on behalf of the owner whose vehicle is being parked.

Tehan's own post-transaction conduct confirms the agency relationship and independently establishes personal assent. He wrote that his vehicle was parked at the facility while shopping, declared that he was its owner, and never suggested that his spouse lacked permission to use it. Goldman Decl. ¶¶ 25-26, Ex. H. He then took control of the notice dispute, accessed the notice through the portal, accepted the Terms through the website portal, and invoked formal arbitration in his own written dispute. Id. ¶¶ 18-29, Exs. F-I. On this record, he cannot disavow the authority that enabled the parking transaction while adopting the transaction and its dispute process as his own.

### D. Equitable estoppel independently forecloses Tehan from relying on the parking contract while rejecting its arbitration clause.

A litigant may not assert claims intertwined with a contract and simultaneously avoid the arbitration term in that contract. *Fox v. Computer World Services Corp.* compelled arbitration where the plaintiff relied on the same agreement for his claims but sought to reject its arbitration

10

PPAB 13988160v2

clause; allowing both positions would create the very "unfair asymmetry" estoppel prevents. 920 F. Supp. 2d 90, 103-04 (D.D.C. 2013).

Tehan's claim depends on the parking contract. He alleges that the vehicle was charged for failing to comply with the facility's registration and payment terms; attacks the resulting amount as unlawful liquidated damages; claims injury because the charge affected his co-owned vehicle; and seeks to represent other vehicle owners charged under those same terms. Compl. ¶¶ 19, 27, 39-47. There would be no claim against Vanguard without the parking transaction and contract. Tehan therefore cannot use that contract as the foundation of his CPPA claim while treating its arbitration clause as though it did not exist.

## II.    The arbitration clause covers Tehan's CPPA claim.

The clause reaches "any and all disputes, claims or controversies" between the parker and Vanguard "arising from" parking at the facility or under the contract. Goldman Decl. ¶ 10, Ex. B. Tehan's claim is precisely that. It challenges the vehicle-registration requirement, posted conditions, automated monitoring, parking charge, notice, dispute process, collection activity, and the alleged liquidated-damages term. Compl. ¶¶ 8-45. The claim cannot be resolved without determining the legal effect of the parking transaction and Vanguard's enforcement of the contract.

The clause also expressly authorizes the arbitrator to award statutory, declaratory, and injunctive relief on an individual basis. Goldman Decl. ¶ 10, Ex. B. The CPPA label therefore does not alter arbitrability. The parties selected arbitration for all disputes arising from this parking relationship, including statutory challenges to the way the contract is administered or enforced.

## III.    Tehan's portal dispute independently requires arbitration.

The portal evidence is unusually strong. Vanguard's records reflect that Tehan submitted his March 22 formal dispute through the portal workflow. Id. ¶ 25, Ex. H.  The Terms of the portal

contained an individual AAA arbitration provision and class waiver covering disputes concerning the Terms or Vanguard's services. Id. ¶¶ 27-29, Ex. I.

D.D.C. decisions enforce this form of assent. A user who is shown linked terms and cannot proceed without checking the agreement box has objectively accepted the contract, whether or not the user later recalls reading it. *Gambo v. Lyft, Inc.*, 642 F. Supp. 3d 46, 54-55 (D.D.C. 2022).

Similarly, when conspicuous text informs the user that clicking an adjacent button constitutes assent to hyperlinked terms. *Selden v. Airbnb, Inc.,* 4 F.4th 148, 152–57 (D.C. Cir. 2021). Applying the same objective-notice principles under District of Columbia law*, Gambo*, 642 F. Supp. 3d at 54–55, confirms that a user who proceeds after receiving such notice is bound whether or not the user later recalls reading the terms.

Here there is more than a technical record. Tehan admitted that he read terms warning that payment would forfeit trial, declined payment for that reason, and later stated that he would proceed to formal arbitration. Goldman Decl. ¶¶ 25-26, Ex. H. His actual notice, repeated acceptances, clicking the checkbox, and use of the portal's dispute machinery independently establish assent.

Tehan cannot invoke the portal's notice-review and dispute machinery while rejecting the condition on which Vanguard made that machinery available. Even apart from the Parking Contract, his repeated express acceptances compel arbitration of the dispute he chose to submit through the portal.

## IV.    The class-action waiver requires individual arbitration.

The Parking Contract and online Terms each require individual arbitration and prohibit class proceedings. Goldman Decl. ¶¶ 9-10, 27-28, Exs. B, I. Tehan accepted the online Terms through the portal's usage at least fifteen times and again used the same assent-controlled process

12

to submit his dispute. The FAA requires enforcement of that bilateral choice. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Tehan must therefore arbitrate only his own claim.

## V.    Section 3 requires a stay.

Vanguard requests a stay. Once a court determines that the claims are referrable to arbitration, Section 3 requires the court to stay the action rather than dismiss it. *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024). All merits and class proceedings should remain stayed until arbitration is complete.

## VI.    Alternatively, any genuine dispute about driving or authorization must be resolved in a prompt, limited Section 4 trial.

The existing record establishes formation. The Complaint admits ownership and use by Tehan's co-owner spouse; Tehan's own correspondence confirms that his vehicle was parked at the facility while shopping and identifies him as the owner; and Vanguard supplies authenticated parking, notice, dispute, and portal records, including fifteen activity entries. Goldman Decl. ¶¶ 11-30, Exs. C-I. A conclusory denial is not enough; Tehan must produce competent evidence comparable to Rule 56 evidence to create a genuine dispute. *Hilbert*, 2025 WL 45634, at *2-3.

If Tehan nevertheless submits competent evidence that he neither drove nor authorized the vehicle's use, the Court must decide that threshold factual issue. Section 4 requires a prompt summary trial confined to formation. *Jin*, 966 F.3d at 827-29. Vanguard therefore requests, only in the alternative, an expedited evidentiary hearing or summary trial limited to (1) who drove the vehicle, (2) whether the driver used it with Tehan's authority, and, only if genuinely disputed, (3) the identity and assent reflected in Vanguard's portal records. Tehan's own pre-suit admissions and notice-specific portal history should be considered at that hearing. Merits and class discovery should remain stayed.

PPAB 13988160v2

## CONCLUSION

The Court should compel George Tehan to arbitrate his claims against Vanguard on an individual basis and stay this action pending arbitration. Alternatively, if Tehan produces competent evidence creating a genuine formation dispute, the Court should set a prompt, limited Section 4 evidentiary hearing or summary trial and stay all other proceedings.

Respectfully Submitted,

Dated: July 13, 2026                    PARKER POE ADAMS & BERNSTEIN LLP


By:  /s/ Joseph F. Fiorill
     Joseph F. Fiorill (D.C. Bar No. 995900)
     900 7th Street NW, Suite 700
     Washington DC 20001
     (202) 854-2819 / (202) 217-2771 (facsimile)
     joefiorill@parkerpoe.com


     KNIGHT LAW, P.A.

     Jeremy I. Knight (D.C. Bar No.  90036942; Fla. Bar
          No. 1009132) (*Pro hac vice* application to be
          submitted)
     Shlomo Y. Hecht (D.C. Bar No. 90013364; Fla. Bar
          No. 127144) (*Pro hac vice* application to be
          submitted)
     4624 Hollywood Blvd., Suite 203
     Hollywood FL 33021
     (786) 480-0045
     yirmi@knightlawfl.com
     sam@knightlawfl.com

14

## LCVR 7(m) CERTIFICATION

Undersigned counsel certifies that he conferred with Plaintiff's counsel regarding this motion as required by LCvR 7(m).  Plaintiff's counsel has stated that he is unable to state definitively whether Plaintiff opposes this motion because Plaintiff's counsel requested and was not provided with certain materials in time for this filing.  Plaintiff states that he reserves the right to oppose this motion upon reviewing it.

/s/ Joseph F. Fiorill
Joseph F. Fiorill

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of July 2026, a copy of the foregoing document has been served electronically on all counsel of record via ECF.


/s/ Joseph F. Fiorill
Joseph F. Fiorill
