**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GEORGE TEHAN**, individually and on behalf of all others similarly situated, *Plaintiff*, v. **VANGUARD PARKING SOLUTIONS, INC.,** *Defendant*. | Case No. 1:26-CV-02254-AHA |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

RELEVANT FACTS .......................................................................................................... 2

LEGAL STANDARD......................................................................................................... 6

ARGUMENT...................................................................................................................... 6

   I.  The Parking Contract Does Not Bind Plaintiff, Nor Was It Ever Formed With
     His Spouse. ............................................................................................................... 6

      A.   As a Non-Party, Plaintiff Is Not Bound to the Parking Contract.................................... 6

      B.   The Parking Contract Was Never Formed With Spouse. ............................................. 10

   II. Plaintiff Did Not Agree to the Online Terms, Nor Do They Require Arbitration of His
     CPPA Claims. ......................................................................................................... 14

      A.   Plaintiff Did Not Agree to the Online Terms................................................................ 14

      B.   The Online Terms Do Not Require Arbitration of His CPPA Claims.......................... 15

   III. The Class Action Waiver Does Not Cover Plaintiff's CPPA Claim. ................................. 17

CONCLUSION................................................................................................................. 18

## TABLE OF AUTHORITIES

### Cases

*Am Prop. Constr. Co. v. Sprenger Lang Found.*,
  768 F. Supp. 2d 207 (D.D.C. 2011)........................................................................... 6

*Brant v. Parking Rev. Recovery Servs.*,
  No. 1:25-cv-01771-GPG, ECF 36 (D. Colo. Apr. 14, 2026)....................................... 13

*Charlton v. Mond*,
  987 A.2d 436 (D.C. 2010) ........................................................................................ 6

*Crostarosa v. Laz Parking Ltd.*,
  2026 U.S. Dist. LEXIS 13154 (D. Colo. Jan. 23, 2026) ........................................... 13

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ................................................................................................ 6

*In re Estate of Fulton*,
  287 A.3d 253 (D.C. 2023) ........................................................................................ 16

*Ex parte Dickinson*,
  711 So. 2d 984 (Ala. 1998)...................................................................................... 8

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ................................................................................................ 6

*Forrest v. Verizon Comms., Inc.*,
  805 A.2d 1007 (D.C. 2002) ...................................................................................... 17

*Fox v. Computer World Servs. Corp.*,
  920 F. Supp. 2d 90 (D.D.C. 2013)............................................................................ 9

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010) ................................................................................................ 6

*Kramer Assocs. v. Ikam, Ltd.*,
  888 A.2d 247 (D.C. 2005)........................................................................................ 6

*Langerhans v. Kia Corp.*,
  No. 24-cv-02994-SAG, 2026 U.S. Dist. LEXIS 54594 (D. Md. Mar. 17, 2026)....................... 7

*Meshel v. Ohev Sholom Talmud Torah*,
  869 A.2d 343 (D.C. 2005)........................................................................................ 16

*Moore v. Jones*,
  542 A.2d 1253 (D.C. 1988)...................................................................................... 16

*Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs., Ltd.*,
  902 F. Supp. 2d 87 (D.D.C. 2012)..............................................................................8

*Plummer v. United States*,
  43 A.3d 260 (D.C. 2012) .........................................................................................10

*Sears v. Catholic Archdiocese of Wash.*,
  5 A.3d 653 (D.C. 2010) ..............................................................................................7

*T St. Dev. LLC v. Dereje & Dereje*,
  581 F. Supp. 2d 26 (D.D.C. 2008).............................................................................14

*Thoubboron v. Ford Motor Co.*,
  809 A.2d 1204 (D.C. 2002) .........................................................................................9

*Tobey v. Ace Parking Mgmt.*,
  2025 U.S. Dist. LEXIS 132016 (N.D. Tex. July 11, 2025)........................................13

*Umstead v. Uber Techs., Inc.*,
  No. 24-cv-1007-RBW, 2026 U.S. Dist. LEXIS 30741 (D.D.C. Feb. 13, 2026) .........8

*\*Union Storage Co. v. Payte*,
  184 A.2d 743 (D.C. Mun. Ct. App. 1962)............................................................10, 11

*\*Walker v. Uber Techs.*,
  749 F. Supp. 3d 134 (D.D.C. 2024).............................................................8, 9, 10, 11

*Wohlmuther v. Mt. Airy Plumbing & Heating, Inc.*,
  244 Md. 321 (Md. 1966) ..............................................................................................7

## **Statutes**

D.C. Consumer Protection Procedures Act.............................................................. passim

**INTRODUCTION**

This is a consumer protection class action brought by Plaintiff George Tehan against Defendant Vanguard Parking Solutions, Inc. ("Vanguard"), which manages parking garages in the District of Columbia. Plaintiff challenges Vanguard's practice of failing to adequately disclose to consumers the requirement that they must register their vehicles using a digital QR code as a condition of parking—and then fining consumers who neglect to do so penalties between $90 and $125 (that are also never disclosed). Plaintiff contends that such penalties are unfair, deceptive, and unlawful, especially when the maximum daily rate is only $20.35. Vanguard's parking ticket at issue in this case was issued to Plaintiff's wife, who parked their co-owned vehicle at the parking garage and received a $90.10 fine for failing to register the vehicle.

Fittingly, Vanguard's motion to compel arbitration tests the limits by which companies can bind consumers to contracts they have never seen. Vanguard first attempts to enforce an arbitration clause in a "Parking Contract" posted on a sign in the parking garage. But Plaintiff was not present when his wife parked in the garage, and he thus cannot be bound to a contract he never saw and to which he is not a party. Nor can Vanguard establish that the Parking Contract was even formed with wife in the first place, as District law requires contractual limitations of liability to be reasonably conspicuous. The Parking Contract fails that standard, as its font is so small that Vanguard's own photograph of the Parking Contract appended to its Motion is literally illegible.

Vanguard's backup attempt to enforce an arbitration clause buried in a separate online clickwrap agreement (the "Online Terms") fails under that contract's own plain language. The Online Terms require arbitration of disputes regarding "your use of Vanguard Parking's website to pay Parking Charges." But Plaintiff's claims do not pertain to his use of Vanguard's website. Rather, they challenge the disclosure and substance of Vanguard's penalty fees. Moreover, the Online Terms expressly permit a user to opt-out of the arbitration clause, and Plaintiff properly

1

did so. The language of the Online Terms' arbitration clause should thus be given its plain meaning and interpreted to exclude Plaintiff's claims in this case. Accordingly, the Court should deny Vanguard's Motion to Compel Arbitration in full.

## RELEVANT FACTS

### I.    Plaintiff's D.C. Consumer Protection Procedures Act ("CPPA") Claims.

This is a putative consumer protection class action that challenges Vanguard's practice of issuing parking penalties between $90 and $125 (the "Penalty Fee") at parking garages in the District. Compl. ¶ 20, ECF 2-2. Vanguard's garages are unlike a typical parking garage where a gate or kiosk "prompts the consumer to stop and review the pricing information before deciding whether or not to use the garage." *Id.* ¶ 14. Instead, Vanguard's garages have no barriers to entry and require consumers, after exiting their vehicles, to electronically register their vehicles via QR code to pay the parking rates—rates which max out at $20.35 for 24 hours of parking. *Id.* ¶ 12. If consumers fail to register their vehicles, Vanguard employs automated cameras that issue the consumer a Penalty Fee of between $90 and $125. *Id.* ¶ 20. Vanguard mails a notice of the Penalty Fee to consumers that asserts the penalty is assessed "because you failed to follow the contract terms," includes a demand to "PLEASE PAY IMMEDIATELY," and threatens that "FAILURE TO MAKE PAYMENT MAY RESULT IN REFERRAL TO COLLECTIONS, ARBITRATION, OR FURTHER LEGAL ACTION." *Id.* ¶ 19 (all-caps in original).

Plaintiff's CPPA claim turns on disclosure, contending that Vanguard's Penalty Fees are unfair and deceptive because they are never disclosed to consumers at the garage. *Id.* ¶ 62(a)-(b). As Vanguard's first hour of parking is free and the maximum rate is $20.35, Plaintiff contends that had the $90-$125 Parking Penalty been disclosed, "reasonable consumers would have registered their vehicles to avoid paying" a penalty that was four times that maximum parking rate. *Id.* ¶ 36. Thus, Vanguard's "practice of automating the issuance of parking tickets for many times greater

than the actual cost of parking exploits consumers and generates disproportionate revenues over technical violations that were not adequately disclosed in the first place." *Id.* ¶ 22. In addition, Plaintiff also asserts a CPPA claim that the Parking Penalty is an unlawful liquidated damages provision under District common law. *Id.* ¶ 62(c).

## II.    Vanguard's Parking Ticket.

Plaintiff and his wife ("Spouse") co-own a vehicle. *Id.* ¶ 6. On January 29, 2026, Spouse drove the vehicle and parked in Vanguard's garage to run errands at a nearby retail store. *Id.* ¶ 8. Plaintiff was not present in the vehicle at the time. Ex. A, G. Tehan Decl. ¶ 3. Spouse did not see any signs regarding parking conditions or terms and thus did not register the vehicle. Ex. B, S. Tehan Decl. ¶ 5; Compl. ¶ 11. Vanguard then issued a mailed notice to Spouse, identifying the vehicle's license plate number and demanding an "AMOUNT NOW DUE" of $90.10. *Id.* ¶ 19.

## III.   The Contracts at Issue.

Vanguard now moves to compel arbitration based on two contracts. The first is a "Parking Contract" that was posted on a physical sign in the parking garage. The Complaint provides a picture of how what appears to be the Parking Contract was posted at the garage's entrance (Parking Contract circled in red). *Id.* ¶ 9.



*Id.* ¶ 9. Vanguard has appended to its Motion a photograph of the "Parking Contract signs and their placement at the [garage] on or about January 29, 2026," whose text is illegible and reproduced below. Decl. of M. Goldman ¶ 6, ECF 8-2 at 2. (Vanguard's photo appears to be a close-up of the sign posted at the garage's entrance shown in the picture from the Complaint on the previous page, as indicated by the two blue posts behind the sign, and the yellow traffic stick in the background.)



4

*Id.*, Ex. A, ECF 8-2 at 7. In addition, Vanguard has also appended a legible version of the Parking Contract, which appears to be a native file and, unlike Vanguard's photograph, does not capture how the Parking Contract appeared at the garage. *Id.*, Ex. B, ECF 8-2 at 9.

Second, Vanguard seeks to enforce an arbitration provision in a separate online contract linked on Vanguard's website (the "Online Terms"). Vanguard contends that the Online Terms were hyperlinked and assented to by Plaintiff by way of a clickwrap interface of Vanguard's website that allows consumers to search for and dispute their parking tickets, which appeared as follows at www.payparkingnotice.com:



*Id.*, Ex. E, ECF 8-2 at 15. The Online Terms are appended as Exhibit F to the Goldman Declaration. *See id.*, Ex. G, ECF 8-2 at 24–38.

## LEGAL STANDARD

Because arbitration is a matter of contract, courts "apply ordinary state-law principles that govern the formation of contracts" to resolve disputes over whether a contract to arbitrate was formed. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 196 (2010) ("It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide."). The party "asserting the existence of a contract . . . [has] the burden of proving that one existed." *Kramer Assocs. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C. 2005).

## ARGUMENT

### I. The Parking Contract Does Not Bind Plaintiff, Nor Was It Ever Formed With His Spouse.

The Parking Contract purports to form a contract with individuals who indicate their assent by parking in the garage, providing: "By parking here, you agree to the terms of this Contract with Vanguard[.]" Goldman Decl. Ex. B, ECF 8-2 at 9. But Plaintiff could not manifest assent by parking because he was not present when Spouse parked the Vehicle in the Parking Garage. Ex. A, G. Tehan Decl. ¶ 3. Vanguard's attempt to bind Plaintiff to the Parking Contract should therefore fail because he is a non-party to the contract and, in any event, Vanguard cannot meet its burden of establishing a contract was ever formed with Spouse.

#### A. As a Non-Party, Plaintiff Is Not Bound to the Parking Contract.

##### 1. Plaintiff Cannot Be Bound By His Spouse's Purported Assent to the Parking Contract.

It is a "fundamental and unobjectionable principle that a contract cannot bind a non-party— i.e., someone who has not assented to be bound to its terms." *Am Prop. Constr. Co. v. Sprenger Lang Found.*, 768 F. Supp. 2d 207, 211–12 (D.D.C. 2011) (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) and *Charlton v. Mond*, 987 A.2d 436, 441 (D.C. 2010) ("Non-parties

6

owe no contractual duty to the contracting parties.")). As Plaintiff was not present when Spouse parked the Vehicle, he cannot have manifested assent to the Parking Contract, is not a party to the Parking Contract, and therefore cannot be bound by its terms. *Id.*

Vanguard's contention that Spouse had either apparent or actual authority to bind Plaintiff to the Parking Contract as his agent should be rejected. Mot. 9. To start, Plaintiff avers that he did not provide his wife with authority to contract with Vanguard on his behalf. Ex. A, G. Tehan Decl. ¶ 4. Moreover, courts have repeatedly dismissed the notion that spouses have such freewheeling agency authority to bind one another to contracts in the course of everyday life. For example, the court in *Langerhans v. Kia Corp.* denied a car manufacturer's attempt to bind a wife to an arbitration agreement agreed-to by her husband while enrolling for "Kia Connect" – an in-vehicle technology system that displays maps and maintenance alerts – in their jointly-purchased vehicle. No. 24-cv-02994-SAG, 2026 U.S. Dist. LEXIS 54594, at *5–6 (D. Md. Mar. 17, 2026). The court first rejected the contention the wife conferred the husband with actual authority because there was no evidence the wife "wished him to enroll in free or low-cost technology services on her behalf" and "mere knowledge and failure to object does not create an agency relationship." *Id.* at 11 (citing *Wohlmuther v. Mt. Airy Plumbing & Heating, Inc.*, 244 Md. 321, 327 (Md. 1966)). The court also held the husband lacked apparent authority, concluding it "simply is not reasonable for Defendants to assume that a person who enrolls in Kia Connect has authority to do so on behalf of every person who ever drives the car when a maintenance alert is visible on the dashboard." *Id.* at 14. *Langerhans* is particularly persuasive, as it applied Maryland contract law—the state from which the District derives its common law. *See Sears v. Catholic Archdiocese of Wash.*, 5 A.3d 653, 662 (D.C. 2010) ("We therefore look for guidance to the law of Maryland, from which the common law of the District of Columbia derived.").

Other courts have held the same. In *Ex parte Dickinson*, the Alabama Supreme Court held a wife was not bound to an arbitration contract signed by her husband in an automobile purchase contract. 711 So. 2d 984, 989 (Ala. 1998). The fact that the vehicle was jointly owned by husband and wife did not change the result, as the court observed: "If we held otherwise, then a husband or wife would rarely be able to enter a contract of this nature with a third party without the spouse's being deemed to have ratified the contract" *Id.* at 989–90. And in this District, courts have similarly rejected attempts to bind spouses to contracts they had never agreed to. For example, in *Walker v. Uber Techs*., Judge Mehta held a husband was not bound to an arbitration agreement agreed-to by his wife, despite the fact that it purported to bind "spouses," holding: "[Defendant] cannot through the backdoor of an arbitration clause turn [husband] into a third-party beneficiary to the Terms that only [wife] agreed to." 749 F. Supp. 3d 134, 150 (D.D.C. 2024) (applying District law); *see also Umstead v. Uber Techs., Inc.*, No. 24-cv-1007-RBW, 2026 U.S. Dist. LEXIS 30741 (D.D.C. Feb. 13, 2026) (interpreting similar provision and holding co-passenger was not bound to arbitration provision agreed-to by passenger) (applying District law).

Vanguard cites no caselaw that has bound a non-party to a contract based on their spouse's assent. The only case cited by Vanguard that is even somewhat relevant to this issue is *Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs., Ltd.*, 902 F. Supp. 2d 87 (D.D.C. 2012). Mot. 9. But *Oehme* examined a different question—whether a <u>corporation</u> had authority to bind an individual to an architectural services contract for a personal home (it did, in part because the individual had made comments on the contract in negotiating its terms). *Oehme*, 902 F. Supp 2d at 101–02. Those facts are plainly distinguishable and inapposite from this case where Plaintiff played no role whatsoever in negotiating the Parking Contract. Vanguard's argument is thus untethered from authority and should be rejected in light of the above caselaw.

8

### 2. Equitable Estoppel Does Not Apply.

"The doctrine of equitable estoppel provides that a party with full knowledge of the facts, which accepts the <u>benefits of a transaction</u>, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effect." *Thoubboron v. Ford Motor Co.*, 809 A.2d 1204, 1212 (D.C. 2002) (emphasis added). Here, Plaintiff's claims are statutory in nature and brought under the CPPA. Compl. ¶ 62. And as Plaintiff does not seek to obtain any benefits from the Parking Contract (nor do his claims require interpretation of any term of the Parking Contract), equitable estoppel does not apply. To this point, *Walker* rejected a similar argument that a non-party "should be estopped from refusing to arbitrate" based on his purported status as a third-party beneficiary. *Walker*, 749 F. Supp. 3d at 149. *Walker* observed that the defendant there cited "no authority for the proposition that District of Columbia law permits a party to a contract to enforce an arbitration provision <u>against</u> a third-party beneficiary" and that "courts in this District have read D.C. law to hold the opposite." *Id.* (emphasis in original, collecting cases).

Vanguard's lone case citation is again inapposite. In *Fox v. Computer World Servs. Corp.*, an employee did not technically sign an offer letter that contained an arbitration provision with an employer—but his complaint asserted that he "accepted" the letter and "relied on its terms." 920 F. Supp. 2d 90, 104 (D.D.C. 2013). The court thus compelled arbitration based on estoppel because the employee's claims were "based on his alleged reliance on the terms of the letter." *Id.* That holding is distinguishable from this case, where Plaintiff's claims do not involve any reliance on any terms of the Parking Contract.

### B. The Parking Contract Was Never Formed With Spouse.

Moreover, Plaintiff should not be bound to the Parking Contract for an alternative reason: Vanguard cannot meet its burden of establishing a contract was formed with Spouse in the first place. Under District law, a defendant seeking to limit its liability by contract must provide sufficient notice of the contractual term. For example, *Union Storage Co. v. Payte* rejected a storage company's attempt to limit liability to a contractual term presented in a customer receipt that provided: "In accepting this receipt, [customer] . . . agrees . . . company shall not be liable for damages for a sum greater than Ten Dollars[.]" 184 A.2d 743, 744 n.1 (D.C. Mun. Ct. App. 1962).[1] The court held that a customer's acceptance of the receipt was insufficient to establish contract formation without additional proof of notice, holding: "There is no testimony in the record that the limitation clause, written in fine print, was ever called to the attention of the [customer] or that they assented to it . . . . We will not uphold a provision limiting liability to a nominal amount <u>in the absence of proof that it was brought to the attention of the [customer] and assented to by him</u>." *Id.* at 744 (emphasis added). *Union Storage* further reasoned that to allow such liability limitations to be buried and enforceable by way of fine print "tends to weaken the sense of responsibility on the part of the warehouseman." *Id.*

*Walker* provides a precedent from this District that has likewise required "clear and conspicuous" notice in order to bind parties to contracts through inquiry notice. 749 F. Supp. 3d at 148. *Walker* held that the following text message sent by Uber to a passenger was insufficient to form a contract to arbitrate: "Your Uber from Cheryl [the passenger's wife] is arriving in 10

---

[1] The D.C. Municipal Court of Appeals is a predecessor to the current D.C. Court of Appeals and thus binding with respect to matters of District of Columbia law. *See Plummer v. United States*, 43 A.3d 260, 269 n.24 (D.C. 2012) (recognizing decisions from the Municipal Court are "binding on a division of this court [the D.C. Court of Appeals]." *Id.*

minutes.\n\nBy [sic] taking this trip, you agree to the Uber Terms of Use [hyperlinked]." 749 F. Supp. 3d at 148. *Walker* concluded such a text was insufficiently clear and conspicuous because its "mishmash of words, symbols, letters, and numbers" failed to establish that the passenger "would have been on notice that the text message contained a hyperlink to the Terms." *Id.*

Vanguard's Parking Contract fails for the same reasons. The Parking Contract limits Vanguard's liability in that it purports to waive a consumer's "right to trial by jury or to participate in a class action." Goldman Decl. Ex. B, ECF 8-2 at 9. Under District law, such attempts to limit liability by contract must be clearly and conspicuously disclosed. *See, e.g.*, *Union Storage*, 128 A.3d at 744 (contractual liability limitation would not be enforced "in the absence of proof that it was brought to the attention of the [customer] and assented by him"); *Walker*, 749 F. Supp. 3d at 148 (text message was insufficiently "clear and conspicuous" to bind consumer by inquiry notice).

Here, Vanguard's Parking Contract was not sufficiently conspicuous to form a contract with Spouse or other consumers. For her part, Spouse avers that she did not see the Parking Contract signage when she parked in the garage. Ex. B, S. Tehan Decl. ¶ 5. And her testimony is corroborated by Vanguard's own evidence, which shows the font used on the Parking Contract was so small that <u>Vanguard's own photograph of the Parking Contract is literally illegible.</u> *See* Goldman Decl. Ex. A, ECF 8-2 at 6. Vanguard's own photograph is the best representation of how the sign appeared to consumers at the garage—and so because its text is illegible, Vanguard cannot establish contract formation under District law. Put another way, if Vanguard's own picture of its Parking Contract is illegible, Vanguard cannot meet its burden of establishing that it provided clear and conspicuous notice of its terms to bind Spouse or other consumers who parked in the garage. Vanguard's photograph is reproduced in full on the following page.

11



*Goldman Decl. Ex. A, ECF 8-2 at 6.*

That picture should speak for itself. This can't be enough to establish contract formation.

Finally, Vanguard's cited authority does not provide any support for the notion that its remarkably fine print signage is sufficient to establish contract formation. To the contrary, each of the signs in Vanguard's cases were <u>actually legible</u> and far less cluttered, as shown in the screenshots below that are copied directly from the case decisions.



*Crostarosa v. Laz Parking Ltd.*, 2026 U.S. Dist. LEXIS 13154 , at *10 (D. Colo. Jan. 23, 2026)





*Tobey v. Ace Parking Mgmt.*, 2025 U.S. Dist. LEXIS 132016, at *19 (N.D. Tex. July 11, 2025)

*Brant v. Parking Rev. Recovery Servs.*, No. 1:25-cv-01771-GPG, ECF 36 at 12 (D. Colo. Apr. 14, 2026)

If anything, such cases that enforced legible signage undermine Vanguard's contention that its usage of illegibly small font is sufficient to form a contract under District law. And nor is Vanguard's citation to a form Florida state court order relevant to the question of District contract

13

formation law presented in this case—which, in any event, contains no reasoning or analysis. *See* Mot., Ex. 1, ECF 8-1 at 2.

**II.   Plaintiff Did Not Agree to the Online Terms, Nor Do They Require Arbitration of His CPPA Claims.**

**A.  Plaintiff Did Not Agree to the Online Terms.**

Recognizing that Plaintiff cannot be bound to the Parking Contract, Vanguard alternatively contends that a separate contract—an online "Vanguard Terms of Service" (the "Online Terms")—requires arbitration of Plaintiff's claims. However, Plaintiff affirmatively rejected the Online Terms, writing in a February 14, 2026, email: "<u>After reading the terms of payment, which state that by paying I am forfeiting my right to trial by submitting a payment, I have decided not to pay</u>. I will follow up with a formal protest letter in the next few days prior to the deadline given in the notice." Goldman Decl. Ex. F, ECF 8-2 at 18 (emphasis added); *see also* Ex. A, G. Tehan Decl. ¶ 7. Plaintiff's express statement rejecting the Online Terms and affirmative decision not to make payment due to concerns he was forfeiting his trial right under such terms are a clear and unequivocal rejection that negates Vanguard's contention that a contract was formed. *See T St. Dev. LLC v. Dereje & Dereje*, 581 F. Supp. 2d 26, 32 (D.D.C. 2008) (finding there was no "meeting of the minds" sufficient to form contract where parties disagreed on material terms). As a result, Plaintiff did not agree to the Online Terms and is not subject to its arbitration provision altogether.

Should Vanguard contend such an express rejection is insufficient to negate formation, Plaintiff still is not bound to the Online Terms' arbitration provision because his email satisfied the contract's opt-out clause. The Online Terms provide: "You may opt-out of the above arbitration clause by emailing us to disputes@vanguardparking.co, within seven (7) days of you entering into these terms for the first time, an opt-out notice that identifies yourself and clearly sets out your

14

choice to opt out of dispute resolution by arbitration." Goldman Decl. Ex. G, ECF 8-2 at 34. Plaintiff's February 14, 2026 email satisfied this opt-out provision—it was sent to "disputes@vanguardparking.co" within seven days of his first accessing Vanguard's website, identified himself by name, and clearly set out his choice to opt out of dispute resolution by arbitration by stating he would not make payment because he did not want to "forfeit[] my right to trial by submitting payment [and agreeing to the Online Terms]." Ex. A, G. Tehan Decl. ¶¶ 5, 7; Goldman Decl. Ex. F, ECF 8-2 at 18. Plaintiff's opt-out email was also timely, as it was sent four days after he first accessed Vanguard's website on February 10, 2026. G. Tehan Decl. ¶ 5. This express opt-out only further confirms that Plaintiff is not bound by the Online Terms' arbitration provision.

### B.  The Online Terms Do Not Require Arbitration of His CPPA Claims.

Even assuming the Online Terms' arbitration provision is enforceable against Plaintiff, it still would not cover his CPPA claims. Critically, the arbitration clause only mandates arbitration of "disputes, claims or controversies between you and Vanguard Parking regarding these Terms or the Services." *See* Goldman Decl. Ex. G, ECF 8-2 at 33. The Online Terms define "Terms" as "the following terms and conditions" and "Services" as follows:

> The Terms <u>specifically govern your use of Vanguard Parking's website to pay Parking Charges</u> (As such term is defined in the Parking Agreement referenced below) (the "Services").

*Id.*, ECF 8-2 at 24 (emphasis added).

Here, Plaintiff's CPPA claim challenges the disclosure and substantive legality of the Penalty Fees. Compl. ¶ 62(a)–(c). And because that CPPA claim has nothing to do with Plaintiff's use of Vanguard's website, it falls outside the scope of the Online Terms' arbitration provision, which only covers claims regarding the "use of Vanguard Parking's website to pay Parking Charges." Goldman Decl. Ex. G, ECF 8-2 at 24. Such an express limitation—in addition to the use

15

of the word "specifically"—should be given plain meaning. *See Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 361 (D.C. 2005) (contract interpretation "look[s] first to the actual language of the contract and give[s] that language its plain meaning"). The Online Terms thus cannot be interpreted to require arbitration of a claim that falls outside the scope of its arbitration clause. Vanguard's attempts to expand the arbitration clause's reach based on Plaintiff's post-contract communications should also fail, as it is axiomatic that a contract "must be construed within its four corners" and "should generally be enforced as written." *Moore v. Jones*, 542 A.2d 1253, 1254 (D.C. 1988).

In the event Vanguard contends on Reply that the Online Terms bound Plaintiff to the Parking Contract through incorporation by reference, that argument should be rejected. While the Online Terms "specifically incorporate" a "Parking Agreement," the Online Terms never disclose the terms of the "Parking Agreement." *See* Goldman Decl. Ex. G, ECF 8-2 at 29; *see also id.*, ECF 8-2 at 24 (defining "Parking Agreement" as "the Parking Agreement that you entered into by entering a parking facility owned by and/or operated by Vanguard Parking").[2]

"A party cannot unilaterally declare that they have an agreement with another without evidence that the two have communicated about its terms." *In re Estate of Fulton*, 287 A.3d 253, 261 (D.C. 2023). The Parking Agreement's terms are not included in the Online Terms, nor do they appear to be even hyperlinked. Goldman Decl. Ex. G, ECF 8-2 at 29. As a result, like in *Fulton*, Vanguard cannot bind Plaintiff to a Parking Agreement he never saw and whose terms were never communicated to him. *See Fulton*, 287 A.3d at 261 (where party was not made aware of "terms [of a contract], we cannot say that she even passively agreed to be bound by it"); *see*

---

[2] It is not entirely clear what document the "Parking Agreement" even refers to, as the sign posted in the parking garage is titled, "Parking Contract." In its Motion, Vanguard similarly uses the term "Parking Contract" to refer to the contract purportedly assented-to by Spouse. Mot. at 5.

*also id.* (comparing lack of notice with *Forrest v. Verizon Comms., Inc.*, 805 A.2d 1007, 1010 (D.C. 2002), where party was bound to contract they "at least had the 'opportunity to read'"). Accordingly, the arbitration clause in the Online Terms does not mandate arbitration of Plaintiffs' CPPA claims, which have no relation to his use of Vanguard's website.

**III.     The Class Action Waiver Does Not Cover Plaintiff's CPPA Claim.**

Vanguard's conclusory contention the Online Terms' class action waiver applies to Plaintiff's CPPA claims fails for similar reasons (tellingly, Vanguard does not quote the class action waiver). The Online Terms' class action waiver is part of the arbitration clause, which provides in relevant part:

> Subject to the exceptions below, any and all disputes, claims or controversies between you and Vanguard Parking regarding these terms or the services, which are not amicably resolved, shall be settled through binding arbitration (rather than in court) . . . . All claims must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding . . . <u>You and Vanguard Parking are each waiving the right to trial by jury or to participate in a class action. You may opt-out of the above arbitration clause by emailing us to disputes@vanguardparking.co</u> . . . ."

Goldman Decl. Ex. G, ECF 8-2 at 34 (emphasis added).

The former underlined sentence (the class action waiver) immediately proceeds the latter underlined sentence (explaining consumers may "opt-out of the <u>above</u> arbitration clause"). Thus, the class action waiver is part-and-parcel of the Online Terms' arbitration clause.

As set out above Plaintiff never agreed to the Online Terms and, at the very least, opted out of its arbitration clause—and is therefore likewise not subject to the arbitration clause's class action waiver. And as set out above, even if the arbitration clause did apply, the arbitration clause—and its integrated class action waiver—only applies to disputes regarding Plaintiff's "use of Vanguard Parking's website to pay Parking Charges." *Id.*, ECF 8-2 at 24. As a result, neither

17

the arbitration clause nor its class action waiver apply to Plaintiffs' CPPA claims—which do not relate to his use of Vanguard's website whatsoever.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Vanguard's Motion to Compel Arbitration.

Date: August 3, 2026                               Respectfully submitted,

*/s/ Randolph T. Chen*
Randolph T. Chen (DC Bar No. 1032644)
Jason S. Rathod (DC Bar No. 1000882)
Nicholas A. Migliaccio (DC Bar No. 484366)
**MIGLIACCIO & RATHOD LLP**
412 H Street NE, Ste. 302
Washington DC 20002
Office: (202) 470-3520
Fax: (202) 800-2730
rchen@classlawdc.com
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

18